**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CHERYL McGRATH,**

      **Petitioner,**

      v.

**UNITED STATES OF AMERICA,**

      **Respondent.**

**CASE NO. 2:18-CV-5139
CRIM. NO. 2:17-CR-125
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson**

**REPORT AND RECOMMENDATION**

Petitioner, a federal prisoner, brings this Motion to Vacate under 28 U.S.C. § 2255. (Doc. 41). The matter is before the Court on the Motion to Vacate, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, it is **RECOMMENDED** that the Motion be **DENIED** and this action be **DISMISSED.**

**I.     BACKGROUND**

On June 22, 2017, Petitioner pleaded guilty pursuant to the terms of her negotiated Plea Agreement to willful failure to pay over tax, in violation of 26 U.S.C. § 7202, and health care fraud, in violation of 18 U.S.C. § 1347. (Docs. 2, 20). Later that year, on November 8, 2017, Petitioner filed a Motion to Withdraw Plea of Guilty. (Doc. 21). On December 21, 2017, the Court denied that motion. (Doc. 24). The Court ultimately imposed a sentence of thirty-six months imprisonment to be followed by three years supervised release, pursuant to the agreement of the parties under Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure. (Docs. 28, 29). On November 6, 2018, the United States Court of Appeals for the Sixth Circuit affirmed the Court's denial of Petitioner's motion to withdraw her guilty plea. (Doc. 39).

On November 14, 2019, Petitioner brought this case, asserting that she was denied the effective assistance of counsel.

## II.     STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

To obtain relief under 28 U.S.C. § 2255, a prisoner must allege either "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).  In addition, "it is well-established that a § 2255 motion 'is not a substitute for a direct appeal.'" *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Regalado v. United* States, 334 F.3d 520, 528 (6th Cir. 2003)).  Accordingly, if a claim could have been raised on direct appeal, but was not, the Court will not consider the claim via a § 2255 motion unless the petitioner shows: (1) cause and actual prejudice to excuse his failure to raise the claim previously; or (2) that he is "actually innocent" of the crime.  *Ray,* 721 F.3d at 761 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

## III.     DISCUSSION

Although her argument contains several subparts, Petitioner's only claim is that her lawyer did not adequately represent her.  Her grievance list is long.  She asserts that she was denied the effective assistance of counsel because her attorney failed to obtain necessary

discovery, did not file motions, and told her that if she did not accept the Plea Agreement she would go to jail for a "long time." She further complains that her attorney did not hire a forensic accountant or challenge restitution calculations but instead advised her to admit to over-billing to obtain a two-level reduction in her recommended sentence under the advisory United States Sentencing Guidelines. According to Petitioner, defense counsel refused to correct errors in the PreSentence Investigation Report, stating that they were not important. Also, Petitioner claims, defense counsel refused to request a continuance of her sentencing hearing. Petitioner further maintains that counsel mislead her regarding the terms of the Plea Agreement and potential sentence she faced and failed properly to advise her regarding potential sentencing ramifications. She asserts that, but for the inadequate performance of defense counsel, she would have pled not guilty and proceeded to trial or otherwise would have had a shorter sentence. (Doc. 41, PAGEID # 195). The government has submitted the Affidavit of Todd A. Long, Petitioner's former defense counsel, in response to these allegations. (Doc. 46-1).

    A.   *Strickland*

"In all criminal prosecutions," the Sixth Amendment affords "the accused ... the right ... to Assistance of Counsel for his defence." U.S. Const. amend. VI. "Only a right to effective assistance of counsel serves the guarantee." *Couch v. Booker*, 632 F.3d 241, 245 (6th Cir. 2011) (citation and quotations omitted). The United States Supreme Court set forth the legal principals governing claims of ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 556 (1984). *Strickland* requires a movant claiming ineffective assistance of counsel to demonstrate that his counsel's performance was deficient and that he suffered prejudice as a result. 466 U.S. at 687. To show deficient performance, a petitioner must demonstrate that his counsel's representation "'fell below an objective standard of reasonableness.'" *Richardson v. Palmer*,

941 F.3d 838, 856 (6th Cir. 2019) (quoting *Strickland*, 466 U.S. at 688). "Regarding prejudice," a petitioner "must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Richardson*, 941 F.3d at 856 (quoting *Premo v. Moore*, 562 U.S. 115, 121 (2011)). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 104 (2011) (quoting *Strickland*, 466 U.S. at 689).

Because a criminal defendant waives numerous constitutional rights when she pleads guilty, the guilty plea must be entered knowingly and voluntarily in order to be constitutionally valid. *Boykin v. Alabama*, 395 U.S. 238, 244 (1969). "'The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" *Sparks v. Sowders*, 852 F.2d 882, 885 (6th Cir. 1988) (quoting *North Carolina v. Alford*, 400 U.S. 25, 31 (1970)). In applying this standard, a court must look at the totality of the circumstances surrounding the plea. *Id.* A criminal defendant's solemn declaration of guilt carries a presumption of truthfulness. *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). Further, a criminal defendant cannot successfully challenge the voluntariness of his plea merely on the basis that he was motivated to plead guilty. *Brady v. United States*, 397 U.S. 742, 750 (1970).

Yet, a petitioner may challenge the entry of a plea of guilty on the basis that counsel's ineffectiveness prevented the plea from being knowing and voluntary. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Again, *Strickland*'s two part-test applies to challenges to guilty pleas based on a claim of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Sparks v. Sowders*, 852 F.2d 882, 884 (6th Cir. 1988). Relevant here, "[a] defendant without any

4

viable defense will be highly likely to lose at trial. And a defendant facing such long odds will rarely be able to show prejudice from accepting a guilty plea that offers him a better resolution than would be likely after trial." *Lee*, 137 S. Ct. at 1966.

### B. Application

Applied here, Petitioner cannot meet either prong of the *Strickland* test.

#### 1. Deficient Performance

The record indicates that, on May 12, 2017, Petitioner signed a Plea Agreement indicating that she understood the elements of the offenses charged and the potential penalties. (Doc. 2, PAGEID # 10-11).[1] She understood all of the rights that she was waiving by entry of her guilty plea. (*Id.*, PAGEID # 11). The parties specifically agreed to the application of various terms of the Sentencing Guidelines:

a) Pursuant to Guidelines § 2B3.1(a) the base offense level for Count 2 is 6;

b) Pursuant to Guidelines § 2B1.1(b)(1)(I), the loss amount for Count 2 is between $1,500,000 and $3,500,000, resulting in an increase of 16 levels, for a base offense level of 22;

c) Pursuant to Guidelines § 2B1.1(b)(7), the loss amount for Count 2 to the Government health care benefit programs was more than $1,000,000, resulting in an additional 2 level enhancement for a base offense level 24;

d) Pursuant to Guidelines § 3B1.3, the defendant abused a position of trust relating to Count 2, resulting in an additional 2 level increase for a base offense level 26.

e) Pursuant to Guidelines § 2T1.1 and § 2T4.1(B), the tax loss for Count 1 is $366,825.31 resulting in a base offense of 18.

(*Plea Agreement*, Doc. 2, PAGEID # 12). Moreover, Petitioner agreed to be sentenced to 36 months to be followed by three years supervised release. (*Id.*) She agreed to cooperate with the

---

[1] Petitioner faced statutory penalties of five years on Count 1 and ten years on Count 2. (Plea Agreement, Doc. 2, PAGEID # 11).

IRS and pay any outstanding taxes, penalties, and interest due. (*Id.*, PAGEID # 13). She further agreed to pay restitution in the amount of $366,825.31 to the IRS and $2,200,238.18 to the Ohio Medicaid Program. (*Id.*) The government did not oppose a three-level reduction in Petitioner's recommended sentence under the Sentencing Guidelines based upon her acceptance of responsibility and timely notification of her intention to plead guilty. (*Id.*, PAGEID # 11, 14). The government additionally agreed not to pursue any additional charges based on the conduct charged or her failure to file federal tax returns between 2014 and 2016, assuming that she filed all outstanding tax returns. (*Id.*).

In exchange, Petitioner waived her right to appeal the sentence unless it exceeded the statutory maximum. (*Id.*, PAGEID # 14). During her plea colloquy, Petitioner indicated that she had read and understood the terms of the Plea Agreement and had discussed it with counsel. She denied being threatened or forced into pleading guilty and stated that she was fully satisfied with the representation of her attorney. (*Id.*, PAGEID # 15). A three-page Statement of Facts is attached to the Plea Agreement. (*Id.*, PAGEID # 17–19). Petitioner agreed with those facts, signing a statement acknowledging that they were true and correct and that she had reviewed them with her attorney. (*Id.*, PAGEID # 19).

On June 22, 2017, the day that she entered her guilty plea, Petitioner again stated, under oath, that she had read and understood the charges against her. (*Transcript,* Doc. 20, PAGEID # 53–54). She waived her right to indictment by a grand jury. (*Id.*, PAGEID # 53–56). She agreed that she had told her attorney all of the facts about the case and was satisfied with his advice and representation. (*Id.*, PAGEID # 56–57). The Court advised Petitioner of the elements of the offenses charged and the potential penalties she faced. She had discussed with counsel how the sentencing guidelines would apply in her case. (*Id.*, PAGEID # 61). The Court

6

advised her of all of the rights she was waiving by entry of her guilty plea. Petitioner at all times indicated that she understood. (*Id.*, PAGEID # 57–63).

The prosecutor summarized the terms of the Plea Agreement, including her waiver of the right to appeal the sentence unless it exceeded the statutory maximum. (*Id.*, PAGEID # 63–67). She had read and agreed to the statement of facts, after carefully reviewing them with her attorney, and again acknowledged the truth and correctness of these facts. (*Id.*, PAGEID # 69, 72). Petitioner also agreed with the terms of the Plea Agreement. (*Id.*, PAGEID # 69). She agreed to the imposition of a 36 months' imprisonment. (*Id.*, PAGEID # 69–70). She denied being made any other promises not contained within the Plea Agreement. (*Id.*, PAGEID # 71). She admitted her guilt. (*Id.*, PAGEID # 72–73).

In view of this record, Petitioner's allegations now that her counsel's performance led her not to understand the charges against her, the terms of her Plea Agreement, the potential sentencing ramifications, or the sentence that she faced lacks credibility. Courts must be able to rely on a defendant's statements during a plea colloquy, and "'allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Ross*, No. 1:11-cr-00139, 2019 WL 144387, at *3 (S.D. Ohio Jan. 9, 2019) (quoting *Francis v. United States*, No. 1:15-0010, 2015 WL 5566296, at *2, (M.D. Tenn. Sep. 21, 2015)).

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) (citations and footnote omitted).

7

Moreover, the record does not support Petitioner's claim that defense counsel failed to obtain discovery material.

> Well before she signed the plea agreement, the government provided or presented evidence of its case against her, including the willful intent. Specifically, she was shown and made aware of computer records that showed that she was going into the billing program and increasing the nursing visits even though there was no documentation to support it. She was aware that we interviewed employees who said that she was intentionally going in and making the changes and even confronted her about it.

(*Transcript*, Doc. 37, PAGEID # 169).  Put simply, the record shows that the government provided its information regarding its determination of loss. (*Id.*)  Petitioner does not identify the nature of any additional discovery material that would have assisted the defense or affected the entry of her guilty plea or sentencing.

The record likewise does not indicate that the government over-estimated or incorrectly calculated the loss amounts attributable to her.

> The government [] had informed McGrath that it had relied on a two-week period to represent the company's entire billing cycle because it was consistent with the reports by patients and HHCSEO employees that patients had been receiving approximately one visit per week but were being billed for three to five visits per week.  Therefore, the government relied on an extrapolation to arrive at a reasonable estimate of the loss as required under the guidelines.  See USSG § 2B1.1, comment. (n.3(F)(viii)). "Extrapolation methods . . . are appropriate when 'the fraud occurred over a long period of time, and a precise calculation of the loss is simply not feasible.'" *United States v. Carmichael*, 676 F. App'x 402, 406 (6th Cir.) (quoting *United States v. Tipton*, 269 F. App'x 551, 561 (6th Cir. 2008)), *cert. denied*, 137 S.Ct. 2109 (2017).  As the government pointed out, McGrath. . . has yet to present an alternative method of calculation that she believes would more accurately reflect the amount of loss for purposes of determining restitution.

(*Order*, Doc. 39, PAGEID # 184–85.)    Consequently, Petitioner's claim that a forensic analyst could have assisted the defense is without support.

In view of these facts, it was not unreasonable for counsel to advise Petitioner to enter a guilty plea under the negotiated terms of this Plea Agreement.  Petitioner thereby substantially

8

reduced her potential prison exposure. Even after the three-level reduction of her recommended sentence for acceptance of responsibility and timely notifying the authorities of her intent to plead guilty, she had a recommended guideline sentence of 57–71 months imprisonment. (*See PreSentence Investigation Report*). By entry of her guilty plea, however, she obtained a sentence of 36 months. The government additionally agreed not to pursue additional charges against her. (*Transcript*, Doc. 37, PAGEID # 172).[2] The record fails to support Petitioner's claim that that she could have obtained a lower sentence or better terms. The record likewise does not indicate that any further investigation by defense counsel or the filing of additional motions would have assisted the defense.

Under the terms of her Plea Agreement, Petitioner waived her right to appeal, except as to a claim of ineffective assistance of counsel or prosecutorial misconduct. (*Plea Agreement*, Doc. 2, PAGEID # 14). Defense counsel pursued a timely appeal of the Court's denial of Petitioner's motion to withdraw her guilty plea. Petitioner does not identify, and the record does not reflect, any other potentially meritorious grounds for an appeal.

Given all of this, Petitioner has provided no basis for this Court to conclude that counsel performed deficiently.

---

[2] Defense counsel indicates that:

> AUSA Affeldt explained that if a plea agreement was not reached. . . then the government would seek to indict Ms. McGrath for health care fraud, willful failure to pay over tax, and possibly other offenses. AUSA Affeldt also explained that the government would continue to investigate Ms. McGrath's billing practices for things other than skilled nursing, the subject of the current health care fraud investigation, which could further drive up the amount of loss and restitution.

(*Affidavit of Todd Long*, Doc. 46-1, PAGEID # 230–31).

2. *Prejudice*

Additionally, and even more clearly, the record does not indicate that the government would have been unable to establish the charges against the Petitioner. To the contrary, the government's evidence against Petitioner appears to have been strong. The facts indicate that Petitioner owned and operated a home health care business, maintained the books and records regarding payroll, and had responsibility for all aspects of the business. (*Statement of Facts*, Doc. 2, PAGEID # 17). From March 2009 to December 2013, she withheld—but did not pay—the federal employment taxes due in an amount totaling $366.825.31. (*Id.*, PAGEID # 18). From 2009 to 2015, she billed the Ohio Medicaid Program for home health nursing services not rendered by routinely changing the claim information in billing software to falsely reflect additional hours of home health nursing services. She falsely increased the number of nursing visits from one visit per week to between three and five visits per week. She submitted claims for nursing services of Medicaid patients ineligible to receive home health services as residing in private nursing homes or deceased. (*Id.*, PAGEID # 19). Petitioner verified that her conduct resulted in over $300,000 in loss to the IRS. (*PreSentence Investigation Report*, ¶ 28). She also billed Medicaid for more visits than were actually provided over the course of three years, and manipulated the data provided to the third-party billing company, resulting in more than $2.2 million in false claims. (*Id.*, ¶ 30). "According to Ms. McGrath, when she realized the Medicaid program was not 'watching' the billing, she decided to submit false claims in order to meet her payroll expenses. . . . [S]he admitted to taking several trips to Florida during that time, as well as Costa Rica and Puerto Rico." (*Id.*, ¶ 31).

Given the government's strong case against her, Petitioner has not (and cannot) demonstrate any prejudice resulting from counsel's performance.

10

## IV. DISPOSITION

For the foregoing reasons, it is **RECOMMENDED** that the Motion be **DENIED** and this action be **DISMISSED.**

## PROCEDURE ON OBJECTIONS

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

IT IS SO ORDERED.

Date: July 14, 2020          /s/ Kimberly A. Jolson
                             KIMBERLY A. JOLSON
                             UNITED STATES MAGISTRATE JUDGE